Mason L. Harms, Defendant for the Use of Ralph E. ZumBahlen, Plaintiff-Appellee, v. The Travelers Indemnity Company, Defendant-Appellant.

Gen. No. 11,691.

Second District, First Division.

February 19, 1963.

Shapiro & Lauridsen, of Kankakee (Edward G. Vogt, of counsel), for appellant.

Fleming & McGrew, of Watseka, for appellee.

DOVE, J.

Appellant, The Travelers Indemnity Company, issued its family automobile policy of insurance, covering a Ford Automobile and insuring the liability of Mason L. Harms for bodily injuries sustained by any person and for property damage arising out of the ownership, maintenance or use of said automobile. The policy period was from June 23, 1959 to June 23, 1960. The bodily injury liability was limited to $10,000 for each person. On October 25, 1959, the insured, Harms, was involved in an automobile collision with Ralph E. ZumBahlen, who brought an action in the Circuit Court of Iroquois County against Harms, and on June 26, 1961 recovered a $62,500 judgment against him.

On September 20, 1961, the instant garnishment action was commenced by ZumBahlen filing his affidavit alleging that appellant was indebted to Harms and praying that it be summoned as garnishee. The answer of the garnishee denied it was indebted to Harms in any amount and alleged that the policy issued by it to Harms had been cancelled by it prior to October 25, 1959. The issues raised by the affidavit and answer were submitted to a jury resulting in a verdict and judgment for the plaintiff for $10,000. The post-trial motion of the Indemnity Company was denied and it appeals.

The record discloses that the insurance policy in question was issued by appellant to Harms. It is dated July 27, 1959 and recites that it became effective on June 23, 1959 and expired on June 23, 1960. The total premium is stated to be $138.20. Mr. Harms testified

249

he made a down payment and was to pay the balance by the month but missed a payment either in August or September. The policy gives the name and address of the insured as: "Mason L. Harms, P.O. Box 534, Mike Tarroffs Apt. #4, Rantoul, Illinois" and contains this provision: "Cancellation: This policy may be cancelled by the insured named in Item I of the declarations by mailing to the company written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by the company by mailing to the insured named in Item I, of the declarations at the address shown in this policy written notice stating when, not less than ten (10) days thereafter, such cancellation shall be effective. The mailing of notice as aforesaid, shall be sufficient proof of notice. The effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by such insured or by the company shall be equivalent to mailing. If such insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected, or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation."

Upon the hearing plaintiff's Exhibit No. 3, identified by Harms, was offered and admitted in evidence, and is as follows:

"NOTICE OF CANCELATION THE TRAVELERS
Hartford, Connecticut
Office: Peoria, Illinois

Date of Issue: 10-9-59

Please take notice that the Policy or Policies designated below, heretofore issued to you, are canceled in accordance with their terms, such cancelation to become effective on the date stated

250

below at the hour on which the Policy or Policies became effective.

The provisions of the Policy or Policies respecting premium adjustment upon cancelation are applicable.

This notice is given only by the Company or Companies which issued the Policy or Policies designated below.

| | Extension | Effective |
|---|---|---|
| Policy No. KMP–6675327 | Certificate No. — | Date of Cancelation |
| | | 10–20–59 |

This Notice is to: THE TRAVELERS INSURANCE COMPANY
/s/ J. Montgomery, Secretary
Compensation and Liability Dept.

Mason L. Harms
P. O. Box 534, Mike Tarroffs
Apt. #4
Rantoul, Illinois

 THE TRAVELERS INDEMNITY COMPANY,
 for Itself and as Successor to
 THE TRAVELERS FIRE INSURANCE COMPANY,
 by Merger
 /s/ J. Montgomery, Secretary
 Casualty Underwriting Dept."

Mervin W. Weeks testified that he was manager, and in charge of the Peoria office of appellant, having the responsibility of determining the desirability of business for appellant and when "we shall end our relationship with the business." Referring to the foregoing exhibit No. 3, the notice of cancellation, he said: "It was in my possession on October 9, 1959. I mailed it to the name and address indicated thereon. This cancellation notice is prepared by one of the female clerks in the office. I examine it for accuracy, check the name and address, the effective date of cancellation and then I place it in an envelope and personally deposit it in the United States Mail. I check every one for postage and accuracy. I placed it in the Commercial National Bank Building Box on October 9, 1959 at approximately 4:35 p. m. in the ordinary course of business. I keep a record which

251

is Defendant's Exhibit No. 2. I can identify the handwriting on Defendant's Exhibit No. 2 as my own. It truly and correctly portrays what it purports to portray. I placed Plaintiff's Exhibit No. 3 in the envelope. I then made sure that the name and address showed clearly through the window. I then sealed it and checked it for postage and put it in my own desk preparing to mailing it that night. I keep my desk locked at all times when I am away from it. The cancellation notices are always placed in my own desk and kept under lock and key when I am away from it. I detach the sealed envelopes and leave the office and deposit them in the United States Mailbox. I did so in this case. I handle ten cancellation notices on the average a week. I mailed, Plaintiff's Exhibit 3 to the address on the policy after comparing it with our records. The effective date of cancellation is October 20, 1959. The reason for cancellation was nonpayment of premium budget. The cancellation was ordered by the Premium Budget Unit in Chicago. When I mail notices of cancellation I separate them to make sure they don't stick together and drop them individually in the mailbox. This instrument was handled in that manner. The mailbox in the lobby in the Commercial National Bank Building is a metal box with bags placed at times in addition thereto. I followed the provision of the policy, paragraph 31 of Plaintiff's Exhibit 2 in mailing this instrument to Mason L. Harms."

Defendant's Exhibit No. 2 which was offered and received in evidence without objection is the office record of the company with reference to this policy. It discloses that the effective date of the cancellation of this policy was "10–20–59," and that the reason for cancellation was "nonpayment of budget installment." It contains a carbon copy of the "Notice of Cancellation" and on the reverse side is a certificate entitled "Affidavit of Mailing," which is as follows:

252

"I hereby certify that at the time and place indicated below, I deposited in the United States Mail the original notice of cancellation of which this is a carbon copy, enclosed in a sealed envelope, bearing proper postage and showing the same name and address of the policyholder that appears on the reverse side hereof.

Post Office at Peoria, Ill.
Date Mailed: 10/9/59 Signed: M. W. Weeks
Time: 4:35 p. m. Date 10/12/59"

Mr. Weeks further testified that this certificate refreshed his recollection and that he recalled that October 9, 1959 was on Friday, that he completed the certificate the next business day which was Monday, October 12, 1959.

Mr. Harms testified that he received this notice of cancellation the first part of November, 1959; that when he received it he was at Chanute Air Force Base, in Rantoul; that it was delivered to him by his step-son, Gerald Wayne Hood; that the notice of cancellation was in a window envelope but he did not recall whether the envelope was opened or unopened; that he had not noticed the postmark, recalled nothing to indicate whether the envelope had been missent or whether there was any postage due and had no idea, at the time of the trial, where the envelope might be.

Gerald Wayne Hood testified that he was the stepson of Harms and lived with him during October, 1959; that Harms went to the Rantoul Hospital on either October 27th or 29th, 1959; that he, Hood, got the mail about every other day from October 25, until November 3, 1959; that the notice of cancellation came in the mail; that it was contained in a window envelope, which he picked up at the post-office at Rantoul after November 3, 1959; that the following morning after he received it he took the envelope and delivered it, unopened, to Harms, who was at the Rantoul Hospi-

tal; that upon receiving it Harms opened it and stated that he did not know that the insurance had been cancelled.

■ The vital question in issue, insists counsel for appellee, is whether this cancellation notice was mailed in apt time to terminate the policy prior to October 25, 1959. Counsel argue that according to the testimony of Harms and Hood, the notice of cancellation did not reach the post-office at Rantoul until, at least, a week after the collision of the Harms and ZumBahlen cars. "It is almost incredible," state counsel, "that it would take more than twenty-five days for this cancellation notice to be transported from Peoria to Rantoul. The only logical inference or conclusion therefore is that the notice was in fact not mailed on October 9, 1959."

The positive assertion of Mr. Weeks, office manager of appellant, and in charge of its Peoria office, is that this cancellation notice was mailed on October 9, 1959 and his testimony is corroborated by the office records of appellant. The assertions of Harms and Hood, to the effect that this cancellation did not reach the insured's mailbox in Rantoul until early in November does not contradict or controvert the testimony of Weeks as to the steps he took and the procedure he followed in endeavoring to effect a cancellation of this policy.

Counsel for appellee state they have "no quarrel with the principle that the denial of the receipt of the cancellation notice is not sufficient to overcome proof of the fact of mailing or the time of mailing," but insist that the prime issue here is whether, under the evidence, the jury could rightfully find that the notice was not mailed in accordance with the provision contained in the policy. In arguing that the jury could so find, counsel insist that Boyle v. Inter Ins. Exchange of Chicago Motor Club, 335 Ill App 386, 82 NE2d 179, Scapes v. Orr, 2 Ill App2d 363, 119 NE

2d 479, Roon v. Van Schouwen, 406 Ill 617, 94 NE2d 880 and The County of Williamson v. Standard Accident Ins. Co., 32 Ill App2d 363, 178 NE2d 149 are not in point because in those cases it appeared the insured never did receive the cancellation notice while in the instant case the insured admits the receipt of such notice after the date of cancellation.

■ In Scapes v. Orr, 2 Ill App2d 363, 119 NE2d 479 plaintiff brought a garnishment action against Allstate Insurance Co. in order to recover on a judgment he had secured against Joseph W. Orr, its insured. The policy issued to Orr, contained this provision:

"This policy may be cancelled by the company by mailing to the named insured, at the address shown in this policy, written notice stating when, not less than five days thereafter, such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date and hour of cancellation stated in the notice shall become the end of the policy period."

The accident upon which the judgment was based, occurred on November 1, 1951. It appeared that the garnishee-defendant had cancelled the policy by sending to the insured notice of cancellation on October 11, 1951, effective October 18, 1951. The insured denied receiving this notice but the Appellate Court in affirming the judgment of the trial court for the defendant stated that the policy provided that proof of the mailing of the cancellation notice, to the address shown in the policy, in accordance with the provisions of the policy is sufficient. Under this holding, and the other authorities hereinafter referred to, it is immaterial whether the notice of cancellation was or was not received by the insured, where it appears

255

that the insurer complied with the cancellation provisions of its policy.

Roon v. Van Schouwen, 406 Ill 617, 94 NE2d 880, was an action similar to the instant proceeding. The garnishee, insurance company, defended on the ground that the policy it issued to the defendant in the original suit had been cancelled by the company and was not in force at the time the injury was alleged to have occurred. After a hearing in the Superior Court of Cook County a judgment was entered upon a directed verdict against the plaintiff. Upon appeal, the Appellate Court found that the policy had not been cancelled and reversed the judgment of the trial court. Thereafter the Supreme Court reversed the judgment of the Appellate Court and affirmed the judgment of the Superior Court. The policy, in the Roon case, provided that it might be cancelled by the company giving at least five days notice, in writing, of such cancellation, mailed to the insured at the address stated in the policy, and that payment or tender of unearned premium was not a condition precedent to cancellation of the policy. In the course of its opinion the Supreme Court said: "From the facts and circumstances in evidence it appears that notice of cancellation was given to the insured in the manner provided by the policy. Thereafter the cancellation was effected on the records of the company in the usual course of business, by a notation to that effect on the company records, followed by the return of the unearned premium. No evidence was offered on the part of the plaintiff to controvert these facts. The mere assertion of the principal defendant that he had no personal knowledge of any of these communications from the garnishee does not controvert the fact that the notice of cancellation was given as required by the policy, or that the same was effectuated in the manner testified to by the officers of the company. There was

256

no evidence to support plaintiff's claim that the garnishee insurance company was indebted in any sum to the principal defendant, Joseph Van Schouwen, Sr."

In Boyle v. Inter Ins. Exchange of Chicago Motor Club, 335 Ill App 386, 82 NE2d 179, it was held that under a policy containing a cancellation clause substantially the same as the one in the instant policy, the mailing to the insured, by the defendant, from its Chicago office of the cancellation notice terminates the policy on the date set forth in the notice and that this is true whether the insured receives the notice or not.

In The County of Williamson v. Standard Accident Ins. Co., 32 Ill App2d 363, 178 NE2d 149, it appeared that the cancellation clause in the policy involved in that case was almost identical with the clause in this policy. In reversing a declaratory judgment of the Circuit Court, which held the policy was in force and effect at the time of a motor vehicle collision, the Appellate Court in its opinion (p 365) stated that there has been a great deal of litigation over insurance cancellations, called attention to a comprehensive annotation on the subject, appearing in 65 ALR 2d 982, and cited Boyle v. Inter Ins. Exchange of Chicago Motor Club, 335 Ill App 386, 82 NE2d 179 and other cases. The court stated that the express provisions of the policy made notice of cancellation sufficient when deposited in the mail and held that the undisputed evidence was that the company had complied with the terms of the policy, which is the requirement of the law.

 Counsel for appellee state, referring to the original notice of cancellation, that a "careful scrutiny of the cancellation date makes it impossible for anyone to say whether the intended date of cancellation is 10–20–59 or 10–29–59." The original notice of cancellation was received in evidence and appears in the

257

record. We have examined it and what it discloses is that in preparing the cancellation notice the stenographer had struck two figures but there is definitely a zero (0) following the figure "2." It clearly appears that the date of cancellation is 10–20–59 and not 10–29–59.

The trial court erred in not directing a verdict for the defendant or in not granting defendant's post-trial motion for judgment notwithstanding the verdict. The judgment of the Circuit Court of Iroquois County is therefore reversed.

Judgment reversed.

McNEAL, P. J. and SMITH, J., concur.