JERALD L. RAGAN, Plaintiff-Appellee, v. COLUMBIA MUTUAL INSURANCE COMPANY, Defendant-Appellant (Looking Glass Mutual Insurance Company *et al.*, Defendants).

Fifth District No. 5—96—0512

Opinion filed September 16, 1997.

GOLDENHERSH, J., concurring in part and dissenting in part.

Michael Reda and John W. Hoffman, both of Edwardsville, for appellant.

Rex Carr and Michael B. Marker, both of Carr, Korein, Tillery, Kunin, Montroy & Glass, of East St. Louis, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

Plaintiff Jerald Ragan owned a seven-unit apartment building in Granite City, Illinois. In the fall of 1992, Ragan contacted defendant Orville Bierbaum, an agent of defendant Looking Glass Insurance Company, to change the insurance coverage on the property. Bierbaum suggested that Ragan apply to defendant Columbia Mutual Insurance Company (Columbia Mutual), and Bierbaum filled out the policy application for Ragan. Columbia Mutual is the only defendant involved in this appeal.

On August 31, 1993, the apartment building was destroyed by fire. Ragan sought insurance benefits under the policy issued by Columbia Mutual. Columbia Mutual claimed it had cancelled the insurance policy on January 4, 1993, effective retroactively to December 26, 1992, for Ragan's failure to pay six premium payments. Ragan sued Columbia Mutual and others and alleged that Columbia Mutual failed to notify him that the policy was cancelled for nonpayment of premiums. Columbia Mutual denied all of Ragan's allegations and asserted as affirmative defenses that the insurance policy was cancelled for the nonpayment of premiums and that notice of the policy's cancellation was properly sent.

On March 29, 1996, the court granted Ragan's motion for summary judgment but reserved the determination of the amount of damages. On June 24, the court denied Columbia Mutual's motion to reconsider and entered judgment on counts I and IV, including ordering Columbia Mutual to pay $117,888.75, the amount of the loss to the property, plus prejudgment interest. The court also awarded $64,411.79 in taxable costs, including reasonable attorney fees (one-third of $116,471.25), the statutory maximum amount for vexatious and unreasonable conduct, the filing fee, and the fee for service of the summons.

Columbia Mutual argues that the court erred (1) by granting summary judgment on count I (the fire insurance claim), (2) by granting summary judgment on count IV (the claim based on vexatious and unreasonable conduct), and (3) by denying Columbia Mutual's motion to reconsider and its motion for leave to amend its prior response to Ragan's request to admit fact.

Columbia Mutual's first argument is that the court erred by granting summary judgment to Ragan on count I of Ragan's complaint. Count I alleged that Ragan's property was damaged by a fire and that the loss of $94,500 was covered by a Columbia Mutual in-

surance policy. Ragan alleged that Columbia Mutual failed to notify him of the amount or due dates of the six premium payments due. Ragan further argued that his reliance on the fact that Columbia Mutual was to send all correspondence regarding the property to his post office box rather than the address of the apartment estopped Columbia Mutual from denying the applicability of the policy. Columbia Mutual argued that it satisfied the statutory requirements of section 143.14(a) of the Illinois Insurance Code (215 ILCS 5/143.14 (West 1994)), when it mailed the notification of cancellation on December 11, 1992, and informed Ragan the policy would be cancelled on December 26, 1992. Therefore, according to Columbia Mutual, the policy provided no coverage for the loss sustained in the August 31, 1993, fire. Ragan argued that although Columbia Mutual produced the envelope containing the notice of cancellation and it included a stamp indicating that it had been processed and mailed to Ragan on December 11, 1992, there was no proof of mailing on an official United States Post Office form or a form recognized by the United States Post Office or other commercial mail delivery services, as required under section 143.14(a) of the Illinois Insurance Code.

■ Section 143.14(a) of the Illinois Insurance Code states:

"(a) No notice of cancellation of any policy of insurance, to which Section 143.11 applies, shall be effective unless mailed by the company to the named insured and the mortgage or lien holder, at the last mailing address known by the company. The company shall maintain proof of mailing of such notice on a recognized U.S. Post Office form or a form acceptable to the U.S. Post Office or other commercial mail delivery service. A copy of all such notices shall be sent to the insured's broker if known, or the agent of record, and to the mortgagee or lienholder, if known, at the last mailing address known to the company." 215 ILCS 5/143.14(a) (West 1994).

The affidavits, depositions, and evidence submitted by Ragan reveal the following facts. The apartment building at issue was located at 2509 Grand Avenue in Granite City. Ragan told his insurance agent, Orville Bierbaum, that he was remodeling one of the units for himself, but that he had not moved into the building. Ragan told Bierbaum to send any correspondence about the policy to Post Office Box 8091, Granite City, where Ragan received all of his business mail. Bierbaum filled out the insurance application on Ragan's behalf and listed 2509 Grand Avenue as Ragan's mailing address but directed all correspondence to Ragan's post office box.

Bierbaum sent a copy of the issued policy and declaration sheet to Ragan's post office box. That same day Ragan contacted his

mortgage company, Roosevelt Bank, to inform it that he had new coverage of the apartment building and that he had six premium installments due on the policy. The bank's agent, Mr. Pehse, told Ragan to bring the policy to the bank so he could check on when the premiums were due. Ragan spoke with Pehse about a week later, and Pehse verified that he had received a copy of the policy and that he was taking care of the insurance. Unknown to Ragan, Roosevelt Bank did not, in fact, make any premium payments to Columbia Mutual. The nonpayment of the six premium bills prompted Columbia Mutual to send a letter of cancellation to Ragan on January 4, 1993, effective retroactively to December 26, 1992.

On August 14, 1995, Ragan sent Columbia Mutual a request to admit, which stated:

"1. The Columbia Mutual Insurance Co. did not maintain proof of mailing of notice of cancellation of Policy No. CPP0011270 to Jerald L. Ragan on a recognized U.S. Post Office form or a form acceptable to the U.S. Post Office or other commercial mail delivery service."

On the same day, Ragan sent Columbia Mutual a notice to produce, which stated:

"You are hereby requested to produce all proofs of mailing of the notice of cancellation of Insurance Policy No. CPP0011270 to the plaintiff Jerald L. Ragan as may be maintained by you. If you maintained no proof of mailing of such notice on a recognized U.S. Post Office form or a form acceptable to the U.S. Post Office or other commercial mail delivery service, please so state in your response to this request to produce."

On August 25, 1995, Columbia Mutual filed its response to the request to admit, stating:

"Columbia Mutual Insurance Company maintains the cancellation letter in its file and, therefore, denies the request to admit."

On September 5, 1995, Ragan filed a motion to strike Columbia Mutual's response to the request to admit. On January 12, 1996, the court struck Columbia Mutual's response as nonresponsive and gave Columbia Mutual an additional week to respond to the request to admit and the notice to produce. Columbia Mutual did not respond within the additional week or at any time before February 6, 1996, when Ragan filed a motion for summary judgment on the grounds that Columbia Mutual had failed to satisfy the statutory criteria for effectively cancelling Ragan's policy. Even then, Columbia Mutual did not respond. On March 29, 1996, when Columbia Mutual filed its response to Ragan's motion for summary judgment, it again filed no response to Ragan's request to admit or Ragan's notice to produce.

On March 29, 1996, the court granted Ragan's motion for summary judgment.

Finally, on May 30, 1996, when Columbia filed a motion to reconsider the court's order allowing Ragan's motion for summary judgment, it produced a document titled "Certificate of Mailing," which it argued was the United States Post Office form referred to in the statute. Columbia Mutual stated that it had not previously produced the certificate of mailing because there was a misunderstanding with its attorneys. On June 24, 1996, the court denied Columbia Mutual's motion to reconsider and ordered Columbia Mutual to pay Ragan $117,888.75, plus $64,411.79 in taxable costs.

Columbia Mutual argues that it produced more than enough evidence to demonstrate policy cancellation, as a matter of law, under section 143.14(a) of the Illinois Insurance Code. Columbia also argues that even if the trial court had considered its evidence insufficient to entitle it to a judgment as a matter of law, the court erred in granting summary judgment on count I because there was an issue of fact as to whether Ragan received a copy of the insurance policy's cancellation. In support of the second argument Columbia Mutual points to the document it produced as a "Certificate of Mailing" and the affidavits of Wayne Wilde, a Columbia Mutual employee, which state that Columbia Mutual maintained the certificate of mailing in its files. Columbia Mutual also points to Bierbaum's testimony that he forwarded several notices of cancellation to Ragan at his post office box, none of which were returned as "undeliverable," thereby giving Ragan notice that his policy would be cancelled unless payments were received.

■ The purpose of summary judgment is to determine whether an issue of material fact exists. *Gilbert v. Sycamore Municipal Hospital,* 156 Ill. 2d 511, 517-18, 622 N.E.2d 788, 792 (1993). A court must construe the pleadings, depositions, admissions, and affidavits strictly against the moving party and liberally in favor of the opponent. *Gilbert,* 156 Ill. 2d at 517-18, 622 N.E.2d at 792. Although summary judgments can aid in the expeditious disposition of lawsuits, summary judgment is a drastic remedy and should only be allowed when it is clear that the record is devoid of any genuine issue of material fact. *Maxton v. Garegnani,* 255 Ill. App. 3d 291, 294, 627 N.E.2d 723, 726 (1994). The sole function of a reviewing court is to determine whether the lower court correctly ruled that no genuine issue of fact had been raised and, if none was raised, whether judgment was correctly entered as a matter of law. *Maxton,* 255 Ill. App. 3d at 294, 627 N.E.2d at 726.

■ In this case, at the initial hearing on Ragan's motion for sum-

mary judgment, Ragan testified that he did not receive a copy of the policy cancellation. Columbia Mutual argues that it sent a copy to the address listed as Ragan's home address on the insurance policy but admits that it was returned to the company by the post office, unopened. The policy had a notation above Ragan's mailing address stating "send P.O. Box 8091." Ragan argues that this notation reflects Ragan's request that all correspondence regarding the policy should be sent to Ragan's post office box rather than his home address. We hold that based on the evidence presented at the initial hearing on Ragan's motion for summary judgment, the court erred in finding that there was no issue of material fact as to whether Ragan received the policy cancellation. The evidence presented would allow a fact finder to rule either way. Therefore, both parties' motions for summary judgment, which were based only on the evidence of the mailings, should have been denied. *However, this ruling does not resolve this case because Ragan had an alternative basis for his motion for summary judgment; Ragan also contended that the court properly granted him summary judgment* because Columbia Mutual failed to maintain the statutorily required certificate of mailing. This question will be addressed in two parts: first, whether the court erred in denying Columbia Mutual's motion to reconsider and striking its late response to the request to admit, and second, assuming the court's action in striking the late response to the request to admit was proper, did the failure of Columbia Mutual to maintain a certificate of mailing mean that the court properly ruled that no notice was given, *which meant that Ragan was entitled to summary judgment on that basis.*

On May 30, 1996, Columbia Mutual filed a motion to reconsider the court's grant of summary judgment. As previously noted, it was at this time that the "Certificate of Mailing," previously asked for in Ragan's request to admit and request to produce filed August 14, 1995, was first produced. Columbia Mutual had filed a response on August 25, 1995, which the court struck as unresponsive. The court granted Columbia Mutual one additional week to file a new response and to produce all proofs of mailing of the notice of cancellation of the insurance policy. Columbia Mutual did neither of these. Instead, after the court granted Ragan's motion for summary judgment, Columbia Mutual filed a motion to reconsider. It was not until that time that Columbia Mutual provided a copy of the notice of mailing the policy cancellation. Under these facts, the issue becomes whether the court had the discretion to allow the filing of the certificate of mailing when it was the subject of a request to admit to which defendant had not timely responded.

Under this court's earlier ruling of *Smoot v. Knott*, 200 Ill. App. 3d 1082, 558 N.E.2d 794 (1990), the trial court should have examined the response and made a determination of whether allowing it would have prejudiced Ragan. If it would not have prejudiced Ragan, then under *Smoot* the late response should have been allowed. If, however, it would have prejudiced Ragan, then the late response should have been allowed only upon a showing of good cause. It is unnecessary for this court to analyze the record for any showing of prejudice to Ragan because the Illinois Supreme Court recently held that prejudice to a party, or the lack of prejudice to a party, was unimportant in deciding whether it was proper to allow a late response to a request to admit.

In *Bright v. Dicke*, 166 Ill. 2d 204, 652 N.E.2d 275 (1995), the Illinois Supreme Court held that a court may allow an untimely response only if the delinquent party has shown good cause for the delay in accordance with Supreme Court Rule 183 (134 Ill. 2d R. 183). The appeal in *Bright* was based on the trial court's order denying the defendant leave to make a late response to the plaintiff's request for admission of facts and genuineness of documents. *Bright*, 166 Ill. 2d at 208-09, 652 N.E.2d at 277. The court affirmed the decision of the appellate court and affirmed the trial court's finding that the defendant in that case had made no good-cause showing for the extension. *Bright*, 166 Ill. 2d at 209, 652 N.E.2d at 277. *Bright* rejected the defendant's argument that her late response should have been admitted solely on the ground that the plaintiff would not be harmed by allowing the late response. *Bright*, 166 Ill. 2d at 210, 652 N.E.2d at 277.

The only question before the trial court on the issue of the late response was whether Columbia Mutual showed good cause for its late response. During the June 12, 1996, hearing on the motion to reconsider, Columbia Mutual provided the following explanation for why the certificate of mailing was not produced until nine months after Ragan filed his request to admit and notice to produce and over eight months after the court had granted Columbia Mutual an additional week to respond:

> "Now we have the actual certificate of mailing which I apologize to the court and to [Ragan's attorney] that because of a misunderstanding we did not have that previously.
>
> For that reason we are asking the Court to reconsider its prior ruling and now deny Plaintiff's Motion for Summary Judgment."

During the same hearing, Ragan's attorney stated why it would be error to allow the "newly discovered" certificate of mailing:

> "Mr. Wilde, contrary to [Columbia Mutual's attorney's] view, testified in his deposition that [Columbia Mutual] had certificates

of mailing in their office. I noticed them to produce it. They never produced it. The Court ordered them to produce it. They never produced it.

I served a demand on them to admit that they had no certificate, and they didn't respond to that and the Court ordered that, therefore, they've admitted that they do not have a certificate on a form acceptable by the postal department."

In its order, the court does not specify its specific reasoning for denying Columbia Mutual's motion to reconsider. The record, however, supports the court's findings on either of two bases.

First, the court could have concluded that Columbia Mutual did not provide a good-cause explanation for why it did not supply the certificate of mailing in response to Ragan's request to admit and notice to produce. See *Bright*, 166 Ill. 2d 204, 652 N.E.2d 275. Under *Bright*, Columbia Mutual's failure to show good cause required the court to deny the motions for leave to file a late response. Second, the court could have concluded that Columbia Mutual engaged in discovery abuse and, therefore, the court refused to consider the untimely introduction of the certificate of mailing as a sanction under Rule 219 (134 Ill. 2d R. 219). During the hearing on the motion to reconsider, the court referred to two cases, *Ostendorf v. International Harvester Co.*, 89 Ill. 2d 273, 433 N.E.2d 253 (1982), and *Buehler v. Whalen*, 70 Ill. 2d 51, 374 N.E.2d 460 (1977), both of which address sanctioning parties for discovery abuse. We conclude that the record would support the court's findings under either of these bases. We, therefore, affirm the court on this issue and hold that it correctly ruled that Columbia Mutual did not maintain the certificate of mailing.

The next question to be answered is whether Columbia Mutual's failure to maintain the certificate of mailing means that notice was not effectively given and that the insurance policy was therefore not cancelled.

Columbia Mutual relies upon *Kolias v. State Farm Mutual Automobile Insurance Co.*, 148 Ill. App. 3d 1086, 500 N.E.2d 502 (1986), and its progeny, to support its argument that notice was effectively given. In *Kolias*, 148 Ill. App. 3d 1086, 500 N.E.2d 502, the first district interpreted the statutory cancellation provision at issue in this case, section 143.14 of the Illinois Insurance Code (Ill. Rev. Stat. 1983, ch. 73, par. 755.14). In *Kolias*, State Farm Insurance Company (State Farm) denied liability coverage for an automobile accident, claiming that its policy was cancelled one week prior to the accident for nonpayment of premiums. *Kolias*, 148 Ill. App. 3d at 1087, 500 N.E.2d at 503. Kolias argued that State Farm's purported

cancellation of the policy was ineffective because, among other things, State Farm failed to retain proof of mailing the notice of cancellation on a recognized United States Post Office form. *Kolias*, 148 Ill. App. 3d at 1090, 500 N.E.2d at 505. *Kolias* held that State Farm adequately established mailing the notice of cancellation by other methods and that the lower court erred in requiring the production of a recognized United States Post Office form. *Kolias*, 148 Ill. App. 3d at 1092, 500 N.E.2d at 506.

The fourth district case of *Bates v. Merrimack Mutual Fire Insurance Co.*, 238 Ill. App. 3d 1050, 605 N.E.2d 626 (1992), addressed the sufficiency of proof required to establish the insurer's mailing of notices of cancellation. *Bates* relied upon *Kolias* for its holding that evidence of mailing practices was enough to satisfy the statutory requirements of section 143.14(a).

There is not, however, a uniform interpretation of section 143.14(a) among the appellate districts. Ragan relies upon the third district case, *Economy Fire & Casualty Co. v. Hughes*, 271 Ill. App. 3d 1009, 649 N.E.2d 561 (1995), to support his argument. The insurer in *Hughes* attempted to establish proof of mailing the notice of cancellation by offering two affidavits that explained the insurer's customary and ordinary business practices in regard to mailing notices of cancellation. *Hughes*, 271 Ill. App. 3d at 1011, 649 N.E.2d at 562. Without mentioning *Bates*, the court disavowed the reasoning in *Kolias*, stating:

> "If the legislature intended to allow an insurer to provide proof of mailing by other methods, as permitted in *Kolias*, the legislature would have clearly so stated in section 143.14." *Hughes*, 271 Ill. App. 3d at 1013, 649 N.E.2d at 564.

*Hughes* emphasizes that *Kolias* was decided prior to the legislative amendments of section 143.14 (in 1987 and 1990), which added the language "or a form acceptable to the U.S. Post Office or other commercial mail delivery service" (Pub. Act 85—843, eff. September 24, 1987; Pub. Act 86—437, eff. January 1, 1990) to the proof-of-mailing requirement for cancellation notices. *Hughes*, 271 Ill. App. 3d at 1013, 649 N.E.2d at 564. *Hughes* notes that the legislature importantly chose not to include the proof-of-mailing methodology created in *Kolias*, and instead it continued to require proof of mailing only "on a recognized U.S. Post Office form or a form acceptable to the U.S. Post Office or other commercial mail delivery service" (215 ILCS 5/143.14(a) (West 1992)). *Hughes* concluded that the clear legislative intent of the section is to permit the proof of mailing notices of cancellation only by those methods enumerated in the statute's plain language. *Hughes*, therefore, held that the insurance

carrier's failure to produce a proof of mailing on a recognized United States Post Office form invalidated any purported cancellation under section 143.14(a). *Hughes*, 271 Ill. App. 3d at 1013-14, 649 N.E.2d at 564.

In this case, Columbia Mutual sent a copy of the policy cancellation to the apartment address, but it was returned to the company as undeliverable. Columbia Mutual had another address for Ragan, his post office box address, yet it never sent a copy of the cancellation to that address. Bierbaum did send a copy of the cancellation to Ragan's post office box, but neither Columbia Mutual nor Bierbaum argues that he sent the copy on behalf of Columbia Mutual. Columbia Mutual does argue, however, that the fact that Bierbaum sent the policy to Ragan's post office box did give Ragan notice of the policy's cancellation. During the hearing, Columbia Mutual did not offer evidence of a certificate of mailing of the policy cancellation. We hold that under the well-reasoned decision of *Economy Fire & Casualty Co. v. Hughes*, 271 Ill. App. 3d 1009, 649 N.E.2d 561 (1995), Columbia Mutual did not satisfy the statutory requirements of section 143.14(a) of the Illinois Insurance Code.

Columbia Mutual's next argument is that the court abused its discretion by granting summary judgment on count IV of Ragan's complaint, finding Columbia Mutual's refusal to pay the amount of the loss payable under the insurance policy to be vexatious and unreasonable conduct and awarding Ragan $64,411.79 in taxable costs for Columbia Mutual's improper conduct.

■ Count IV of Ragan's complaint was based on section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 1994)). Section 155 allows for attorney fees and other costs:

"In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is *vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees [and] other costs, plus an amount not to exceed any one of the following amounts*:

(a) 25% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

(b) *$25,000*;

(c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action." (Emphasis added.) 215 ILCS 5/155(1) (West 1994).

■ In determining whether a defendant's conduct is vexatious

and unreasonable, the trier of fact must examine the totality of the circumstances. *Boyd v. United Farm Mutual Reinsurance Co.*, 231 Ill. App. 3d 992, 999, 596 N.E.2d 1344, 1349 (1992). A finding of vexatious and unreasonable conduct will not be disturbed absent a showing of abuse of discretion. *Boyd*, 231 Ill. App. 3d at 999, 596 N.E.2d at 1349. Courts have held that where there is a question as to whether an insurance policy was in effect at the time of the loss, an insurer's refusal to pay a claim is not vexatious and unreasonable and the insurer is not liable for attorney fees under section 155. *Purlee v. Liberty Mutual Fire Insurance Co.*, 260 Ill. App. 3d 11, 32, 631 N.E.2d 433, 448 (1994), citing *Holbrook v. Institutional Insurance Co.*, 369 F.2d 236 (7th Cir. 1966).

■ In this case, the court awarded Ragan $38,823.75 in reasonable attorney fees (one-third of $116,471.25), $25,000 as the statutory maximum, $353 for a filing fee, and $236.04 for the fees for service of summons, totalling $64,411.79 in total taxable costs. The record is unclear, however, as to how the court arrived at its conclusion that Columbia Mutual's actions were vexatious and unreasonable.

The record reveals that Columbia Mutual refused to pay Ragan for damage to his apartment complex, which was covered by a policy that Columbia Mutual had attempted to cancel prior to the damage occurring. This entire dispute centers around whether Columbia Mutual effectively cancelled the policy under the statutory guidelines. In light of the evidence presented in the record and the split in authority between the first and third districts (see *Kolias v. State Farm Mutual Automobile Insurance Co.*, 148 Ill. App. 3d 1086, 500 N.E.2d 502 (1st Dist. 1986); *Economy Fire & Casualty Co. v. Hughes*, 271 Ill. App. 3d 1009, 649 N.E.2d 561 (3d Dist. 1995)), we cannot agree with the court's conclusion that Columbia Mutual's conduct was vexatious and unreasonable. We, therefore, reverse the court's finding of vexatious and unreasonable conduct.

Columbia Mutual's final argument is that the court erred in denying its motion to reconsider and its leave to amend its prior response to Ragan's request to admit fact.

■ The purpose of a motion to reconsider is to bring to the court's attention newly discovered evidence that was not available at the time of the hearing, changes in the law, or errors in the court's previous application of existing law. *Kaiser v. MEPC American Properties, Inc.*, 164 Ill. App. 3d 978, 987, 518 N.E.2d 424, 429-30 (1987). Columbia Mutual argues that the evidence of mailing the notice of cancellation was not available to counsel before the court's ruling on Ragan's motion for summary judgment and that this new evidence creates an issue of disputed fact that is central to the appropriate-

ness of entering summary judgment. Therefore, according to Columbia Mutual, the court erred in not granting its motion to reconsider.

■ We have previously addressed the issue of whether the court erred in refusing Columbia Mutual's leave to amend its prior response to Ragan's request to admit fact. Regarding the court's denial of Columbia Mutual's motion to reconsider, we hold that the court did not err in its decision.

Columbia Mutual did not provide the court with an explanation as to why it had not previously turned over the "Certificate of Mailing." In its motion to reconsider, Columbia Mutual simply stated, "Due to a misunderstanding between defendant's/movant's attorneys and Columbia Mutual, a Certificate of Mailing was not presented at the time of the hearing [and] [s]ince the time of said hearing, defendant's attorneys have received the Certificate of Mailing ***." Columbia Mutual's explanation was not enough to convince the court that the certificate of mailing was newly discovered evidence that was not available at the time of the hearing. It can be inferred from the record that Columbia Mutual possessed the certificate of mailing document when it was initially requested by Ragan. It may be true that a "misunderstanding" occurred in Columbia Mutual's legal camp regarding the document, but the responsibility and the repercussions for this fact lie squarely at the feet of Columbia Mutual and its attorneys. We hold that the court did not err in denying Columbia Mutual's motion to reconsider.

For the foregoing reasons, we affirm the decision of the trial court as to the judgment for the policy proceeds, and we reverse the decision of the trial court on its ruling on the penalties imposed because of vexatious delay.

Affirmed in part and reversed in part.

HOPKINS, J., concurs.

JUSTICE GOLDENHERSH, specially concurring in part and dissenting in part:

I concur in the greater part of the majority's opinion. I respectfully dissent, however, as to the majority's reversal of the trial court's finding that Columbia Mutual's conduct was vexatious and unreasonable.

As the majority notes, there is a split of authority between the appellate districts. The decision, however, as to whether a defendant's conduct is vexatious and unreasonable is a discretionary decision, and the totality of the circumstances before the trial court must be

considered upon review. *Boyd v. United Farm Mutual Reinsurance Co.*, 231 Ill. App. 3d 992, 596 N.E.2d 344 (1992). The trial court was making this decision in the context of the discovery problems previously noted concerning evidence of mailing. Looking at the totality of the circumstances in which the trial court had to make a discretionary decision as to vexatious and unreasonable delay, I cannot say that its determination that Columbia Mutual's conduct was vexatious and unreasonable was an abuse of discretion. Accordingly, I respectfully dissent.