GARY DUNBAR, d/b/a Dunbar Towing, Plaintiff-Appellee, v. NATIONAL UNION FIRE INSURANCE COMPANY, Defendant-Appellant and Cross-Plaintiff and Third-Party Plaintiff (Protow America, Inc., *et al.*, Defendants; AFCO Credit Corporation, Cross-Defendant; W.T. Fish, d/b/a W.T. Fish Insurance Agency, Third-Party Defendant).

Fourth District    No. 4—90—0042

Opinion filed October 4, 1990.

George B. Gillespie and Lee Humphrey, both of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Springfield, for appellant.

Thomas P. Young, of Muscarello, Crisanti & Young, P.C., of Elgin, for appellee.

JUSTICE STOUDER delivered the opinion of the court:

The plaintiff, Gary Dunbar, d/b/a Dunbar Towing, filed a declaratory judgment action against the defendants, National Union Fire Insurance Company, Protow America, Inc., and AFCO Credit Corporation, seeking a declaration that National Union was obligated to defend the plaintiff in a personal injury suit. The trial court found for the plaintiff. National Union appeals. We reverse.

The facts in this case are not in dispute. On June 27, 1984, the plaintiff applied for a garage owner's liability insurance policy from National Union. On that day a policy was issued to the plaintiff effective June 27, 1984, through June 27, 1985. The policy showed the plaintiff's mailing address to be 4140 N. 8th Street, Springfield, Illinois.

Thereafter, the plaintiff and AFCO entered into an agreement whereby AFCO would finance the premium for the plaintiff's insurance policy with National Union. This agreement contained a power of attorney authorizing AFCO to act on behalf of the plaintiff. The total premium due under this agreement was $10,122. The plaintiff paid AFCO $3,072 as a down payment. The remaining amount was to be paid to AFCO in seven additional monthly payments in the amount of $1,057.27, with the first payment due July 22, 1984.

Thereafter on October 22, 1984, the plaintiff failed to make his October 22, 1984, payment to AFCO as required by the premium finance agreement. On November 1, 1984, AFCO mailed the plaintiff by regular mail, postage prepaid, a notice of intent to cancel if the overdue premium payment was not received in 10 days. The notice was addressed to 4140 N. 8th Street, Springfield, Illinois. The plaintiff admits receiving this notice of intent to cancel from AFCO and also admits failing to pay this payment within 10 days. On November 8, 1984, AFCO mailed by regular mail, postage prepaid, a second notice of intent to cancel indicating that cancellation would be effective November 15, 1984, if payment was not received by that date. The plaintiff denies receiving this notice.

On November 20, 1984, AFCO mailed a notice of cancellation by regular mail, postage prepaid, to the plaintiff and National Union indicating cancellation would be effective November 27, 1984. The plaintiff denies receiving this notice. However, AFCO employee Joyce Oetjens testified that it was properly mailed to the plaintiff's last known address.

The plaintiff also failed to make his November 22, 1984, premium payment. On November 26, 1984, National Union received the notice of cancellation from AFCO. AFCO stated that it was cancelling the policy on behalf of the insured by the power of attorney given to it by the plaintiff. National Union did nothing at that time.

On December 15, 1984, the plaintiff's truck was involved in a personal injury accident, giving rise to the instant declaratory judgment action. On December 19, 1984, AFCO received the plaintiff's October 22, 1984, payment. In response, AFCO sent a notice to the plaintiff acknowledging receipt of his late payment but stating that the policy was still cancelled.

On January 16, 1985, the plaintiff wrote to National Union inquiring about the status of his insurance. On January 23, 1985, National Union informed the plaintiff that his insurance had been cancelled effective November 27, 1984. On June 21, 1985, National Union issued a $6,021 check to AFCO for the unearned premium. This check was forwarded to the plaintiff. National Union admits that it never informed any third-party lienholders about the cancelled insurance policy.

The trial court found for the plaintiff, stating that the defendants had failed to properly terminate the insurance policy since they failed to notify the lienholders. The court therefore held that National Union was required to defend and indemnify the plaintiff in the personal injury suit.

On appeal, National Union argues that the trial court erred in finding that the insurance policy was not properly terminated. Specifically, it contends that AFCO complied with the requirements set forth in section

512 of the Insurance Code (the Code) (Ill. Rev. Stat. 1989, ch. 73, par. 1065.68).

Section 512 provides in pertinent part:

"When a premium finance agreement contains a power of attorney enabling the premium finance company to cancel any insurance contract or contracts listed in the agreement, the insurance contract or contracts shall not be cancelled by the premium finance company unless such cancellation is effectuated in accordance with this Section.

(1) Not less than 10 days written notice shall be mailed to the insured of the intent of the premium finance company to cancel the insurance contract unless the default is cured within such 10 day period.

(2) After expiration of such 10 day period, the premium finance company may thereafter request in the name of the insured, cancellation of such insurance contract or contracts by mailing to the insurer a request for cancellation, and the insurance contract shall be cancelled as if such request for cancellation had been submitted by the insured himself, but without requiring the return of the insurance contract or contracts. The premium finance company shall also mail a copy of said request for cancellation to the insured at his last known address." Ill. Rev. Stat. 1989, ch. 73, par. 1065.68.

■ A review of the statutory notice requirement contained in the above section shows that AFCO complied with the statute. The evidence showed that the agreement contained a power of attorney enabling AFCO to cancel the plaintiff's insurance policy with National Union. On November 1, 1984, AFCO sent the plaintiff a written notice of its intent to cancel. On November 8, 1984, AFCO sent a second notice to the plaintiff stating that unless it received the October payment it would cancel his policy. On November 20, 1984, AFCO mailed its notice of cancellation to the plaintiff and National Union stating that the cancellation would be effective November 27, 1984. As can be seen, the cancellation date was well past the statutory notice requirement of 10 days.

■ The plaintiff argues, however, that since he never received the cancellation notice, the cancellation by AFCO was ineffective. We disagree. The statute only required that AFCO mail a copy of the cancellation request to the insured at his last known address. The evidence showed that AFCO complied with this requirement.

■ The plaintiff also contends that the cancellation was ineffective since National Union failed to comply with section 521(3) of the Code (Ill. Rev. Stat. 1989, ch. 73, par. 1065.68(3)), which requires insurance

companies to notify third parties when a policy is being cancelled. We find this argument meritless.

Although section 521(3) does require notice to third parties, this requirement is irrelevant to any duty owed to the insured plaintiff. (See generally *Tunprasert v. Prince* (1975), 33 Ill. App. 3d 710, 342 N.E.2d 244.) Thus, National Union's failure to give timely notice of the cancellation to any third parties had no effect on the proper notice of cancellation given to the plaintiff by AFCO.

As a final point, the plaintiff argues that the cancellation was ineffective since section 521(2) of the Code requires a premium finance company to send a "request" for cancellation and not a "notice" of cancellation. AFCO admits that it sent a notice of cancellation form instead of a request for cancellation form.

We find this argument meritless. Whether the document sent was a request or a notice to cancel is just a question of semantics since the legal effect was the same. A request for cancellation of insurance by a premium finance company is treated as if the request had come from the insured himself. (Ill. Rev. Stat. 1989, ch. 73, par. 1065.68(2).) Cancellation of an insurance policy by an insured or his agent must be performed in accordance with the terms of the policy. *Kanter v. Trueheart* (1968), 100 Ill. App. 2d 316, 241 N.E.2d 521.

Here, the policy provided that the insured could cancel the policy by giving the insurer advance notice of the date the cancellation was to take effect. As already established, the plaintiff, through AFCO, gave National Union advance notice that the insurance policy was to be cancelled. Therefore, whether the notice of cancellation was in the form of a request or a notice is irrelevant since the effect was the same because the policy was cancelled in accordance with the terms of the contract.

In conclusion, we hold that the trial court erred in finding that the insurance policy had not been cancelled prior to the December 15, 1984, accident. We find that the policy was properly cancelled effective November 27, 1984, and as such the defendant was not required to indemnify or defend the plaintiff for the cause of action arising on December 15, 1984.

Accordingly, the judgment of the circuit court of Sangamon County is reversed.

Reversed.

HEIPLE, P.J., and SCOTT, J., concur.