ECONOMY FIRE AND CASUALTY COMPANY, Plaintiff-Appellee, v. HUBERT HUGHES *et al.*, Defendants-Appellants.

Third District No. 3—94—0526

Opinion filed April 20, 1995.

Braud/Westensee, of Rock Island (Duane Thompson, of counsel), for appellant Hubert Hughes.

Andich, Schubert & Andich, of Rock Island (Stephen G. Andich, of counsel), for appellant Rock Island Bank.

Duncan B. Cooper III and Karen L. Kendall, both of Heyl, Royster, Voelker & Allen, of Peoria (Craig L. Unrath, of counsel), for appellee.

JUSTICE HOLDRIDGE delivered the opinion of the court:

Defendants, Hubert Hughes (Hughes) and Rock Island Bank (the Bank), appeal from an order entered by the circuit court of Henry County which granted the motion for summary judgment of plaintiff, Economy Fire & Casualty Co., and denied defendants' motions for summary judgment. The parties sought declaratory judgment in regard to whether a homeowners insurance policy (policy) issued by plaintiff to Hughes, which listed the Bank as the mortgagee, had been terminated properly. We affirm in part; reverse in part and remand with directions.

On or about May 1990 plaintiff issued to Hughes a policy renewable every three months upon the payment of a quarterly premium. This policy covered Hughes' residence and identified the Bank as the mortgagee.

The policy contained the following cancellation clause:

"b. We may cancel this policy only for the reasons stated in this condition. *The cancellation notice shall be mailed to you at your last mailing address known to us, and we shall obtain a certificate of mailing. A copy of the cancellation notice will also be sent to* the agent or broker and *the last known mortgagee or lienholder, at the last mailing address known to us.*

(1) When you have not paid the premium, whether payable to us or to our agent, we may cancel at any time by mailing you at least 10 days notice of cancellation." (Emphasis added.)

At the time the policy was issued to Hughes, section 143.14(a) of the Illinois Insurance Code (Code) provided:

> "*No notice of cancellation of any policy of insurance* *** *shall be effective unless mailed by the company to the named insured and the mortgage or lien holder, at the last mailing address known by the company. The company shall maintain proof of mailing of such notice on a recognized U.S. Post Office form or a form acceptable to the U.S. Post Office or other commercial mail delivery service.* A copy of all such notices shall be sent to the insured's broker if known, or the agent of record, and to the mortgagee or lienholder, if known, at the last mailing address known to the company." (Emphasis added.) 215 ILCS 5/143.14(a) (West 1992).

In May 1993 a fire substantially destroyed the structure of Hughes' residence. In August 1993 plaintiff advised Hughes and the Bank that it declined coverage for the loss under the policy because Hughes failed to timely pay his quarterly premium for the period of February 24, 1993, through May 24, 1993.

Plaintiff maintained a notice of cancellation was generated on February 26, 1993, and forwarded to Hughes by regular mail on March 1, 1993, to advise him that if payment was not received by March 13, 1993, his coverage under the policy would terminate as of that date. Hughes denied receiving a notice of cancellation for nonpayment or delinquency of payment from plaintiff. However, plaintiff produced a certificate of mailing dated March 1, 1993, which indicated an unidentified piece of mail was received by the postmaster in Lincoln, Illinois, addressed to Hughes.

Plaintiff asserted a notice of cancellation was also mailed to the Bank, by regular mail, which identified the Bank as the mortgagee and included its correct mailing address. However, plaintiff failed to produce a certificate of mailing in regard to the Bank. Instead, plaintiff offered two affidavits which stated it was plaintiff's usual and customary business practice to send all premium notices when due, all cancellation notices when necessary and to further send a notice of cancellation to the mortgagee. The Bank maintained that had such a notice been received, it would have paid the premium in order to keep the policy in force and sought reimbursement from Hughes.

Plaintiff filed a complaint for declaratory judgment requesting the circuit court determine: (1) whether the notice of cancellation sent to the Bank by regular mail was in compliance with regulations under the Code; and (2) if said notice was not in compliance, would this in any way affect the notice of cancellation as to Hughes.

Hughes filed an answer and counterclaim for declaratory relief alleging neither he nor the Bank received any notice of cancellation. The Bank filed an answer and requested the circuit court find: (1) that notice of cancellation was never mailed to the Bank; (2) that the policy had not been cancelled; and (3) that plaintiff must provide coverage to the Bank.

Cross-motions for summary judgment were filed by all parties. The circuit court granted plaintiff's motion and denied defendants' motions, finding plaintiff had complied with the notice requirements of both the policy and the Code.

On appeal, defendants contend: (1) plaintiff failed to give proper notice of cancellation to Hughes and the Bank; (2) plaintiff violated the terms of the policy and the Code in regard to said notice; (3) plaintiff's cancellation of the policy was ineffective; and (4) the circuit court improperly granted plaintiff's motion and denied defendants' motions.

It is well settled that "[a] motion for summary judgment should only be granted if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Boylan v. Martindale* (1982), 103 Ill. App. 3d 335, 339.

The Code defines "cancellation" or "cancelled" as "the termination of a policy by an insurer prior to the expiration date of the policy." (215 ILCS 5/143.13(g) (West 1992).) Section 143.14(a) provides, in relevant part, "[n]o notice of cancellation *** shall be effective unless mailed *** to the named insured *and* the mortgage or lien holder ***. The company shall *maintain proof of mailing of such notice on a recognized U.S. Post Office form or a form acceptable to the U.S. Post Office* or other commercial mail delivery service." (Emphasis added.) 215 ILCS 5/143.14(a) (West 1992).

"Courts normally are required to interpret words in a statute according to their plain and ordinary meaning [citation], unless this would defeat the legislative intent [citation]." *(People v. Scharlau* (1990), 141 Ill. 2d 180, 193.) In interpreting the plain and ordinary meaning of the language of section 143.14(a), we find an insurer must mail a notice of cancellation to both the insured and the mortgagee, and must maintain proof of mailing the notices to both on a recognized United States Post Office form or a form acceptable to the United States Post Office or other commercial mail delivery service.

■ The record reveals that in compliance with the notice requirements of the policy and the Code, plaintiff did produce a certificate of mailing which indicated an unidentified piece of mail was received by the postmaster in Lincoln, Illinois, addressed to Hughes. We

conclude that no genuine issue of material fact exists regarding whether Hughes was given proper notice of cancellation as required by both the policy and the Code. Therefore, plaintiff's notice of cancellation was effective as to Hughes and summary judgment was properly granted on this issue.

■ However, plaintiff failed to produce proof of mailing the notice to the Bank on a recognized United States Post Office form or a form acceptable to the United States Post Office or other commercial mail delivery service as required by the Code. The affidavits produced by plaintiff, which attested to its customary and ordinary business practices in regard to mailing notices of cancellations, demonstrate that plaintiff did not comply with the unambiguous requirements of section 143.14(a). The evidence is clear that plaintiff did not comply with section 143.14(a) in notifying the Bank of cancellation. Plaintiff's notice of cancellation therefore was ineffective as to the Bank.

We note the court in *Kolias v. State Farm Mutual Automobile Insurance Co.* (1986), 148 Ill. App. 3d 1086, in interpreting the language of section 143.14, held that the proof of mailing requirement of the statute, *i.e.,* "on a recognized U.S. Post Office form" (Ill. Rev. Stat. 1983, ch. 73, par. 755.14), was not the exclusive method by which proof of mailing may be shown. The court in *Kolias* found that the insurer had met the statutory notice requirement by producing a yellow file copy of the notice of cancellation that bore the insurer's mail room clerk's stamp indicating the notice had been processed for mailing on a specific date. Although the insurer failed to provide a certificate of mailing on a recognized United States Post Office form, the court held that the insurer had established proof of mailing by other means, that being the insurer's customary business practice in regard to mailing notices. The *Kolias* court reasoned that proof of customary business practice was sufficient because "the statute fails to indicate that proof of mailing cannot be shown by other methods." *Kolias,* 148 Ill. App. 3d at 1090.

Following *Scharlau,* we disavow the *Kolias* court's attempt to overlook the plain language of the statute and read into it methods of proof of mailing which were not provided for by our legislature. If the legislature intended to allow an insurer to provide proof of mailing by other methods, as permitted in *Kolias,* the legislature would have clearly so stated in section 143.14. It is important to note that *Kolias* was decided prior to legislative amendment of section 143.14 in 1989. This amendment added the language "*or a form acceptable to the U.S. Post Office or other commercial mail delivery service*" (emphasis added) (215 ILCS 5/143.14(a) (West 1992)) to the proof of mailing requirement for cancellation notices. Importantly, when

amending this section the legislature could have provided for a proof of mailing methodology created by the *Kolias* court. Instead, the legislature continued to require proof of mailing "on a recognized U.S. Post Office form or a form acceptable to the U.S. Post Office or other commercial mail delivery service" (215 ILCS 5/143.14(a) (West 1992)) *only*. We find the clear legislative intent of section 143.14(a) in regard to proof of mailing notices of cancellation is to permit such proof to be established only by those methods enumerated in the plain language of this statute. Therefore, this court declines to follow the analysis and holding in *Kolias*.

Hughes contends that plaintiff's failure to give proper notice of cancellation to the Bank, as required by section 143.14(a), affects the validity of the notice given to him and revives his coverage under the policy. Although we have found no Illinois authority which addresses directly this issue, we note "[t]he vast majority of cases from other jurisdictions have held that the failure to notify the mortgagee does not affect an otherwise valid cancellation as against the named insured." *Ellegood v. American States Insurance Co.* (1994), 266 Ill. App. 3d 135, 137-38.

In *Dunbar v. National Union Fire Insurance Co.* (1990), 203 Ill. App. 3d 661, 665, the court held that although the relevant statute required notice to third-party lienholders, the requirement was irrelevant to any duty owed to the insured. As a result, the insurer's failure to notify the third-party lienholders did not affect the proper notice given to the insured. (*Dunbar*, 203 Ill. App. 3d at 665.) *Dunbar* cited *Tunprasert v. Prince* (1975), 33 Ill. App. 3d 710, which stood for the proposition that, although a statutory requirement of notice to a third party may exist, such requirement is irrelevant to any duty owed to the insured plaintiff. The court in *Tunprasert* stated, "[w]e find no relationship between the two separate notices which would in any way benefit the named insured." (*Tunprasert*, 33 Ill. App. 3d at 712.) Following the rationale of *Ellegood*, *Dunbar* and *Tunprasert*, we conclude that plaintiff's failure to give proper notice of cancellation to the Bank, as required by section 143.14(a), does not revive the terminated coverage under the policy as to Hughes. We therefore conclude that cancellation of the policy was effective as to Hughes, but ineffective as to the Bank.

Lastly, plaintiff contends that the interests of the Bank are not represented in this appeal. In support of this contention, plaintiff asserts that in Hughes' initial brief: (1) the Bank's name does not appear on the title page; (2) neither the statement of facts, the argument, the conclusion, nor the proof of service presents arguments in regard to the interests of the Bank; and (3) it does not mention that

the Bank is represented by Hughes' counsel. Plaintiff further maintains that Hughes lacks standing to argue on behalf of the Bank that the policy should not be terminated due to the plaintiff's failure to give proper notice of cancellation to the Bank.

Supreme Court Rule 303(a)(3) provides:

"If a timely notice of appeal is filed and served by a party, any other party, within 10 days after service upon him or her, or within 30 days from the entry of the judgment or order being appealed, or within 30 days of the entry of the order disposing of the last pending post-judgment motion, whichever is later, may join in the appeal, appeal separately, or cross-appeal by filing a notice of appeal, indicating which type of appeal is being taken." (Official Reports Advance Sheet No. 26 (December 22, 1993), R. 303(a)(3), eff. February 1, 1994.)

In *Kenney v. Churchill Truck Lines, Inc.* (1972), 6 Ill. App. 3d 983, 988-89, the court interpreted Rule 303(a)(3) and stated:

"We believe that the plain meaning of Rule 303(a) is to provide a liberal and reasonable method for appeal in a multiple party litigation so that if a proper timely notice of appeal is filed to commence the review, then any other party involved in the suit may then participate in the appeal—by either joining or merging, separately appealing, or cross appealing. *** [T]he modern trend [is] to simplify the mechanics of review, placing less emphasis upon form and more upon merits."

The circuit court of Henry County entered its order on June 29, 1994. In compliance with Rule 303(a)(3), Hughes filed his notice of appeal on July 18, 1994, 19 days after the circuit court entered its order. In compliance with Rule 303(a)(3), the Bank filed a notice of joining the prior appeal on July 29, 1994, 30 days after the circuit court entered its order. Following the rationale of *Kenney*, and based on the Bank's compliance with Rule 303(a)(3), we find that the interests of the Bank are represented in this appeal and determinable by this court.

Based on the foregoing: (1) the circuit court's grant of plaintiff's motion for summary judgment is affirmed as to Hughes and reversed, as a matter of law, as to the Bank; (2) the circuit court's denial of Hughes' motion for summary judgment is affirmed; and (3) the circuit court's denial of the Bank's motion for summary judgment is reversed and remanded for entry of judgment in favor of the Bank.

Affirmed in part; reversed in part and remanded with directions.

BRESLIN and McCUSKEY, JJ., concur.